UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PHILLIP CHARLES SOLOWESZYK,
    Plaintiff,

vs.

BROOKLYN WATER ENTERPRISES, INC. f/k/a THE ORIGINAL BROOKLYN WATER BAGEL CO., INC. a/k/a THE ORIGINAL BROOKLYN WATER BAGEL COMPANY,
    Defendants.

## COMPLAINT

Plaintiff, PHILLIP CHARLES SOLOWESZYK, (hereinafter "Plaintiff"), by his undersigned, hereby files this Complaint and sues Defendant, BROOKLYN WATER ENTERPRISES, INC. f/k/a THE ORIGINAL BROOKLYN WATER BAGEL CO., INC. a/k/a THE ORIGINAL BROOKLYN WATER BAGEL COMPANY, for Injunctive Relief, attorney's fees, litigation expenses and costs pursuant to Title III of the Americans with Disabilities Act, as amended, 42 U.S.C. §§s 12181-12189 (hereinafter the "A.D.A"), 28 C.F.R. Part 36, *et seq*.

## JURISDICTION AND VENUE

**1.** Venue lies in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) and Local Rule 3.1, in that the original transaction or occurrence giving rise to this cause of action occurred in this District.

**2.** This Court has been given original jurisdiction as this is an action for declaratory and injunctive relief, attorney's fees, costs, and litigation expenses for unlawful disability discrimination in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28 C.F.R. Part 36.

**3.** This Court has jurisdiction over this case based on federal question jurisdiction, 28

U.S.C. §1331 and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§2201 and 2202.

4. Plaintiff is a resident of Palm Beach County, Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5. Plaintiff is a visually-impaired and legally blind person who requires assistive technology to read websites and mobile application content using his computer, phone and other mobile devices. Plaintiff was diagnosed as having suffered with retinal disease at the age of 16. In 2017, his vision got much worse, and he was diagnosed as legally blind. Later, in 2019, he was diagnosed with a rare genetic eye disease known as Stargardt's. Plaintiff is legally blind and thus is substantially limited in performing one or more major life activities, including, but not limited to, sight, accurately visualizing his world, and adequately traversing obstacles. As such, he is a member of a protected class under the ADA, 42 U.S.C. §12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§36.101, *et seq*., and 42 U.S.C. §3602(h). Plaintiff further is an advocate of the rights of similarly situated disabled persons and is a "tester" for the purposes of asserting his civil rights and monitoring, ensuring, and determining whether places of public accommodation and/or their respective and associated websites are in compliance with the ADA and any other applicable disability laws, regulations, and ordinances.

6. Because Plaintiff is blind, he cannot use his computer without the assistance of appropriate and available auxiliary aids, screen reader software, and other technology. Screen reader software translates the visual internet into an auditory equivalent. At a rapid pace, the software reads the content of a webpage to the user. "The screen reading software uses auditory cues to allow a visually impaired user to effectively use websites. For example, when using the visual internet, a seeing user learns that a link may be 'clicked,' which will bring him to another

webpage, through visual cues, such as a change in the color of the text (often text is turned from black to blue). When the sighted user's cursor hovers over the link, it changes from an arrow symbol to a hand. The screen reading software uses auditory -- rather than visual -- cues to relay this same information. When a sight impaired individual reaches a link that may be 'clicked on,' the software reads the link to the user, and after reading the text of the link says the word 'clickable.'…Through a series of auditory cues read aloud by the screen reader, the visually impaired user can navigate a website by listening and responding with his keyboard." *Andrews v. Blick Art Materials, LLC*, 286 F.Supp.3d 365, 374 (E.D.N.Y.2017).

7. Defendant, BROOKLYN WATER ENTERPRISES, INC. f/k/a THE ORIGINAL BROOKLYN WATER BAGEL CO., INC. a/k/a THE ORIGINAL BROOKLYN WATER BAGEL COMPANY, is a Florida for-profit company authorized to do business and doing business in the State of Florida. Defendant owns, operates, and/or controls the Franchise known as "Brooklyn Water Bagels" which has approximately 15 different locations in Florida, contains an online menu, an online listing of locations, and a catering menu.

8. Plaintiff's blindness limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids, and services for effective communication, including communication in connection with his use of a computer.

9. Plaintiff frequently accesses the internet. Because he is blind, to effectively communicate and comprehend information available on the internet and thereby access and comprehend websites, Plaintiff uses commercially available screen reader software to interface with the various websites.

10. At all times material hereto, Defendant was and still is an organization that owns, operates, and/or controls a chain of approximately 15 franchise restaurants selling bagels, breakfast and lunch items, bakery items, and coffee under the brand name "Brooklyn Water

Bagels". Each "Brooklyn Water Bagels" restaurant is open to the public. As the owner, operator, and/or controller of these stores, Defendant is defined as a place of "public accommodation" within meaning of the ADA because Defendant is a private entity which owns, operates, and/or controls "a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104.

11. Because Defendant is a store open to the public, each of Defendant's physical stores is a place of public accommodation subject to the requirements of the ADA, 42 U.S.C. §12182, §12181(7)(E), and its implementing regulations, 28 C.F.R. Part 36. Defendant also owns, controls, maintains, and/or operates an adjunct websites, www.brooklynwaterbagel.com and https://brooklynwatercoffeeroasters.com, (the "Websites"). One of the functions of the Websites are to provide the public information on the locations of Defendant's physical stores. Defendant also sells to the public its merchandise through the Websites, which acts as a critical point of sale for Defendant's merchandise also available for purchase in, from, and through Defendant's physical stores. In addition, the Websites allow users to arrange for in-store pickups of food and drink orders purchased online, and to purchase physical or electronic gift cards for use online and in the physical stores.

12. The Websites also service Defendant's physical stores by providing information on available products, services, tips and advice, editorials, sales campaigns, events, and other information that Defendant is interested in communicating to its customers.

13. Because the Websites allow the public the ability to secure information about the locations of Defendant's physical stores, purchase merchandise also available for purchase in, from, and through the physical stores, arrange for in-store pickups of food and drink orders and merchandise purchased online, and purchase physical or electronic gift cards for use online and in

the physical stores, the Websites have a nexus to, and is an extension of and gateway to, the goods, services, privileges, and advantages of Defendant's physical stores, which are places of public accommodation under the ADA. As an extension of and service, privilege, and advantage provided by a place of public accommodation as defined under the ADA, the Websites are an extension of the services, privileges, and advantages made available to the general public by Defendant at and through its brick-and-mortar locations and businesses. Furthermore, the Websites are a necessary service and privilege of Defendant's physical stores in that, as a critical point of sale for Defendant's stores, it enables users of the Websites to make online purchases of Defendant's merchandise that is also available for purchase in, from, and through its physical stores.

14. Because the public can view the Defendant's menu, view information about the Defendant's locations, and place online orders through the Websites for the same items that are offered for sale in, from, and through Defendant's physical stores, thus having the Websites act as a critical point of sale for Defendant's merchandise that is also sold in, from, and through the physical stores, arrange for in-store pickups of food and drink orders and merchandise purchased online, and purchase physical or electronic gift cards for use online and in the physical stores. The Websites are an extension of and gateway to the physical stores which are places of public accommodation pursuant to the ADA, 42 U.S.C. §12181(7)(E). As such, the Websites are a necessary service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages afforded the non-visually disabled public both online and in the physical stores.

**15.** At all times material hereto, Defendant was and still is an organization owning, operating, and/or controlling the Websites. Since the Website are open to the public through the internet, by this nexus the Websites are an intangible service, privilege, and advantage of Defendant's brick-and-mortar stores that must comply with all requirements of the ADA, must not discriminate against individuals with visual disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually-disabled public both online and in the physical stores. As such, Defendant has subjected itself and the Websites to the requirements of the ADA.

**16.** Plaintiff has been on Defendant's websites and is interested in patronizing, and intends to patronize in the near future once the Websites' access barriers are removed or remedied, Defendant's physical store located in Lake Worth, and to check store hours and menu and merchandise pricing, purchase merchandise online, arrange for in-store pickups of merchandise purchased online, and purchase physical or electronic gift cards for use online and in the physical stores. Plaintiff also intends to monitor the Websites in the near future as a tester to ascertain whether it has been updated to interact properly with screen reader software.

**17.** The opportunity to shop Defendant's menu and merchandise, arrange for in-store pickups of merchandise purchased online, and purchase physical or electronic gift cards for use online and in the physical stores, and discounts for use online and in the physical stores from his home are important and necessary accommodations for Plaintiff because traveling outside of his home as a blind individual is often a difficult, hazardous, frightening, frustrating, and confusing experience. Defendant has not provided its business information in any other digital format that is accessible for use by blind and visually disabled individuals using screen reader software.

18. Like many consumers, Plaintiff accesses several websites at a time to help plan his store visits and to compare menu and merchandise offerings, prices, services, sales, discounts, and promotions. Plaintiff may look at several dozen websites to compare features, discounts, services, promotions, and prices.

19. Beginning in April of 2024, Plaintiff attempted on a number of occasions to utilize the Websites to browse through the available merchandise and online offers to educate himself as to the menu and merchandise, sales, services, discounts, and promotions being offered, learn about the brick- and-mortar stores, check store hours, and check menu and merchandise pricing with the intent to make a purchase through the Websites or in, from, and through the physical store located in the Lake Worth. Plaintiff also attempted to access and utilize the Websites in his capacity as a tester to determine whether it was accessible to blind and visually disabled persons such as himself who use screen reader software to access and navigate company websites.

20. Plaintiff utilizes available screen reader software that allows individuals who are blind and visually disabled to communicate with websites. However, Defendant's Website contains access barriers that prevent free and full use by blind and visually disabled individuals using keyboards and available screen reader software. These access barriers, one or more of which were experienced by Plaintiff, are pervasive, include the following (with reference to the Web Content Accessibility Guidelines ("WCAG") 2.1 Level A and AA):

    a) On 1 page, the ARIA 'role=button' element is empty and has no accessible name contrary to WCAG 2.1 A 4.1.2 Section 508 (2017) A 4.1.2,

    b) On 1 page, the 'iframe' and 'frame' elements must have a 'title' attribute as required by WCAG 2.1 A 4.1.2 Section 508 (2017) A 4.1.2,

    c) On 129 pages, 'img' elements must have an accessible name as required by WCAG 2.1 A F65 Section 5080 (2017) A F65,

**d)** On 126 pages, indicating links using only a text color change does not work for color-blind users pursuant to WCAG 2.1 A F73 Section 508 (2017) A F73,

**e)** On 1 page, the visual label must appear in the accessible name of links and controls as required by WCAG 2.1 A F96 Section 508 (2017) A F96,

**f)** On 1 page, the skip link is broken and the target anchor does not exist or is commented out contrary to WCAG 2.1 A 2.4.1 Section 508 (2017) A 2.4.1,

**g)** On 1 page, use HTML headings instead of applying CSS heading styles to non-headings as required by WCAG 2.1 A F2 Section 508 (2017) A F2,

**h)** On 11 pages, use semantic markup like 'strong' instead of using the CSS 'font-weight' property as required by WCAG 2.1 A F2 Section 508 (2017) A F2,

**i)** On 11 pages, ensure that text and background colors have enough contrast as required by WCAG 2.1 AA 1.4.3 Section 508 (2017) AA 1.4.3,

**j)** On 1 page, if you set any of the colors on the 'body' or 'a' elements, you must set all of them as required by WCAG 2.1 AA F24 Section 508 (2017) AA F24,

**k)** On 130 pages, the CSS outline or border style on this element makes it difficult or impossible to see the link focus outline contrary to WCAG 2.1 A AA F78 Section 508 (2017) AA F78,

**l)** On 1 page, use interface controls must have a contrast ratio of at least 3:1 against adjacent colors as required by WCAG 2.1.1.4.11,

**m) The Content overlays with the browser's zoom functionality**

Flexible layouts should be used to show the page content. Dimensions for container elements used to exhibit the page content should be defined using relative units such as %, "em", "rem" and etc to make sure that the content fits on the page when zoomed in. If content is not available when users zoom in, low vision users cannot access the content.

https://www.w3.org/WAI/WCAG21/Understanding/resize-text.html

**n) Non-descriptive link text**

Link text on a web page should be unique and descriptive. A screen reader presents all the links on a web page in the form of a list. As a result, users will access only the link text and not the surrounding information. Thus, it

is essential to provide meaningful and unique link text to enable screen reader users to understand the link information when read out of context.

https://www.w3.org/WAI/WCAG21/Understanding/link-purpose-in-context.html

o) **Missing heading mark-up**

Headings are used to add structure to the webpage. Proper heading structure enables screen reader users to understand the webpage structure. Use headings in the correct sequence; such as h2 should follow h1, h3 should follow h2 and so on. Making text appear as headings visually by changing the font size or making the text strong will not be identified as a heading by a screen reader. In the absence of appropriate heading level mark-up, screen reader will treat it as a piece of text and important structure information will not be made available to the users. In addition, screen reader users have a tendency to skim through the webpages using heading level navigation. Appropriate heading structure enables screen reader users to understand the webpage structure as well as navigate through the webpage easily.

https://www.w3.org/WAI/WCAG21/Understanding/info-and-relationships.html

p) **Unnecessary alt text for decorative images**

Alternative text provides the information shown through images to the users in the form of text. Alternative text is helpful for users with visual disabilities, learning disabilities, users browsing with text browsers etc. to understand the information conveyed using images. Provide purposeful and descriptive alternative text for images that describes the purpose of the image. However, if images are decorative then a descriptive alternative text is not required. Empty alternative text (alt="") should be specified for decorative images to ensure that screen reader skips the decorative images.

https://www.w3.org/WAI/WCAG21/Understanding/non-text-content.html

q) **Generic error messages**

When generic and non-descriptive error messages are provided users find it challenging to identify the fields in error and amend the entered data. Add descriptive error messages for all form fields with errors unless it would affect the security of the form data.

https://www.w3.org/WAI/WCAG21/Understanding/error-identification.html

21. Plaintiff attempted to locate an "accessibility" notice, statement, or policy on the Websites that would direct him to a webpage with contact information for disabled individuals who have questions or concerns about, or who are having difficulties accessing, navigating, and communicating with, the Websites. Although the Website "brooklywaterbagel.com" appeared to have an "accessibility" statement linked from its home page via a Website Accessibility "seal," clicking on that link led only to a web url: https://accounts.accessibe.com/statement/?domain=brooklynwaterbagel.com, with an error page stating "Hmm. We're having trouble finding that site." Plaintiff, thus, was unable to receive any meaningful or prompt assistance through the "accessibility" statement and "accessibility" link/widget/plugin to enable him to equally, quickly, fully, and effectively navigate the Website.

22. The fact that Plaintiff could not communicate with or within the Websites left him feeling excluded, frustrated, and humiliated, and gave him a sense of isolation and segregation, as he is unable to participate in the same experience, with the same access to the menu, online ordering, merchandise, sales, services, discounts, and promotions, as provided at the Websites and in the physical stores as the non-visually-disabled public.

23. Plaintiff desires, and intends in the near future once the Websites' access barriers are removed or remedied, to patronize Defendant's physical store located in Lake Worth and to use the Websites, but he is presently unable to fully and equally do so as he is unable to effectively communicate with Defendant due to his blindness and the Websites' access barriers. Alternatively, as a tester using screen reader software, Plaintiff is unable to effectively access, navigate, and communicate with Defendant through the Websites due to his blindness and the Websites' access barriers. Thus, Plaintiff and others who are blind and with visual disabilities will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and

practices as set forth herein unless properly enjoined by this Court.

24. Because of the nexus between Defendant's physical stores and the Websites, and the fact that the Websites clearly provides support for and is connected to Defendant's physical stores for its operation and use, the Websites are an intangible service, privilege, and advantage of Defendant's brick-and-mortar-stores that must comply with all requirements of the ADA, must not discriminate against individuals with disabilities, and must not deny those individuals the same full and equal access to and enjoyment of the goods, services, privileges, and advantages as afforded the non-visually disabled public both online and in the physical stores, which are places of public accommodation subject to the requirements of the ADA.

25. Upon information and belief, Defendant has not initiated a Web Accessibility Policy to ensure full and equal use of the Websites by individuals with disabilities.

26. Upon information and belief, Defendant has not instituted a Web Accessibility Committee to ensure full and equal use of Websites by individuals with disabilities.

27. Upon information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to ensure full and equal use of the Websites by individuals with disabilities.

28. Upon information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to ensure full and equal use of the Websites by individuals with disabilities.

29. Upon information and belief, Defendant has not instituted a User Accessibility Testing Group to ensure full and equal use of the Websites by individuals with disabilities.

30. Upon information and belief, Defendant has not instituted a Bug Fix Priority Policy.

31. Upon information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

32. Upon information and belief, Defendant has not created and instituted a useful and effective Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually disabled.

33. Upon information and belief, Defendant has not created and instituted on the Websites a useful and effective page for individuals with disabilities, nor displayed a proper link and information hotline, nor created a proper information portal explaining when and how Defendant will have the Websites, applications, and digital assets accessible to the visually disabled and/or blind communities.

34. The Websites do not meet the Web Content Accessibility Guidelines ("WCAG") 2.1 Level AA or higher Levels of web accessibility.

36. Defendant has not disclosed to the public any intended audits or changes to correct the inaccessibility of the Websites to visually disabled individuals who want the safety and privacy of viewing Defendant's menu and making online orders for Defendant's food items, drink items, and merchandise offered on the Websites and in the physical stores from their homes. However, they have a Final Judgment entered into in a prior 2018 case vaguely alleging that they will make their Website accessible to the visually-impaired individuals and ensure that their Website complies with the Website Accessibility Guidelines by October 2018.  They have not complied with this Final Judgment despite being the Party who had moved for the judgment in the prior ADA case (Case No. 18-cv-60018-JEM, in the U.S District Court, Southern District of Florida).

37. Defendant thus has intentionally and willfully failed to provided full and equal

access to, and enjoyment of, the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Websites and the physical stores in contravention of the ADA.

38. Public accommodations under the ADA must ensure that their places of public accommodation provide effective communication for all members of the general public, including individuals with visual disabilities such as Plaintiff.

39. The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life. That mandate extends to internet e-commerce websites such as the Websites at issue in the instant action.

40. Defendant is, and at all relevant times has been, aware of the barriers to effective communication within the Websites which prevent individuals with visual disabilities from the means to comprehend information presented therein.

41. Defendant is, and at all relevant times has been, aware of the need to provide full and equal access to all visitors to the Websites.

42. The barriers that exist on the Websites result in discriminatory and unequal treatment of individuals with visual disabilities, including Plaintiff.

43. Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with the Websites' access and operation.

44. Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§2201 and 2202.

45. Plaintiff has retained the undersigned attorneys to represent him in this case and has agreed to pay them a reasonable fee for their services.

## COUNT I – VIOLATION OF THE ADA

46. Plaintiff re-alleges paragraphs 1 through 46 as if set forth fully herein.

47. Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA and thus is subject to the ADA.

48. Pursuant to 42 U.S.C. §12181(7)(E), the Websites are covered under the ADA because it provides the general public with the ability to locate and learn about the locations of Defendant's physical stores, place online food and drink orders and purchase merchandise that is also available for purchase in, from, and through the physical stores, arrange for in-store pickups of merchandise purchased online, and purchase physical or electronic gift cards for use online and in the physical stores. The Websites thus is an extension of, gateway to, and intangible service, privilege, and advantage of Defendant's physical stores. Further, the Websites serve to augment Defendant's physical stores by providing the public information about the stores and by educating the public as to Defendant's available merchandise sold through the Website that is also available for purchase in, from, and through the physical stores.

49. Under Title III of the ADA, 42 U.S.C. §12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

50. Specifically, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities,

unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

51. In addition, under Title III of the ADA, 42 U.S.C. §12182(b)(2)(A)(III), unlawful discrimination includes, among other things, "a failure to take such steps, as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

52. Defendant's Websites must comply with the ADA, but it does not as specifically alleged hereinabove and below.

53. Because of the inaccessibility of the Websites, individuals with visual disabilities are denied full and equal access to and enjoyment of the goods, information, and services that Defendant has made available to the public on the Websites and in the physical stores in violation of 42 U.S.C. §12101, *et seq*, and as prohibited by 42 U.S.C. §12182, *et seq*.

54. Defendant has already been sued specifically for lack of access on their Websites by visually-impaired individuals in Case No. 18-cv-60018-JEM, styled *Fuller vs. Brooklyn Water Enterprises, Inc.*, filed in the U.S. District Court, Southern District of Florida ("Prior ADA Case"). Despite moving for and obtaining a Final Judgment against themselves in the Prior ADA Case, which states they will remediate their Websites and bring the same into full compliance by October 2018—they have intentionally and willfully failed to make sufficient material changes or improvements to the Websites to enable its full and equal use, and enjoyment by, and accessibility to, blind and visually disabled persons such as Plaintiff.

55. Also, although the Website "brooklynwaterbagel.com" appeared to have an "accessibility" statement linked from its home page as well as an "accessibility" widget/plugin provided by a third-party vendor named "Level Access" installed, that "accessibility" statement and "accessibility" widget/plugin, when activated and tested, still could not be effectively accessed by, continued to be a barrier to, and did not provide a viable alternative means to fully and equally access and navigate the Website for blind and visually disabled persons, including Plaintiff. Defendant furthermore has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of the Websites to visually disabled individuals. Defendant thus has failed to make reasonable modifications in its policies, practices, or procedures when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, in violation of 28 C.F.R. §36.302.

56. More violations may be present on other pages of the Website, which can and will be determined and proven through the discovery process in this case.

57. There are readily available, well-established guidelines on the internet for making websites accessible to the blind and visually disabled—specifically those referenced in the Final Judgment in the Prior ADA Case which the Defendant moved for and obtained against themselves. These guidelines have been followed by other large business entities in making their websites accessible. Examples of such guidelines include, but are not limited to, adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating such basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to Defendant.

58. Defendant has violated the ADA -- and continues to knowingly and willfully violate the ADA -- by denying access to the Websitess by individuals such as Plaintiff with visual

disabilities who require the assistance of screen reader software to comprehend and access internet websites. These violations within the Websites are ongoing.

59. The ADA requires that places of public accommodation ensure that communication is effective.

60. According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems." Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

61. According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

62. Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

63. As alleged hereinabove, the Websites have not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

64. As a direct and proximate result of Defendant's failure to provide an ADA compliant Websites with a nexus to its brick-and-mortar locations, Plaintiff has suffered an injury in fact by being denied full and equal access to, enjoyment of, and communication with

Defendant's Websites and its physical stores.

65. Because of the inadequate development and administration of the Websites, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

66. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief, including an order to:

   a) Require Defendant to adopt and implement a web accessibility policy to make publicly available, and directly link from the homepage of the Website, a functional statement of the policy to ensure persons with disabilities have full and equal access to and enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the physical stores through the Website.

   b) Require Defendant to take the necessary steps to make the Website readily accessible to and usable by blind and visually disabled users, and during that time period prior to the Website being made readily accessible, provide an alternative method for individuals with visual disabilities to access the information available on the Website until such time that the requisite modifications are made, and

   c) Require Defendant to provide the appropriate auxiliary aids such that individuals with visual disabilities will be able to effectively communicate with the Website for purposes of viewing and locating Defendant's physical stores and becoming informed of and purchasing Defendant's merchandise, and during that time period prior to the Website being designed to permit individuals with visual disabilities to effectively communicate, to provide an alternative method for individuals with visual disabilities to effectively communicate for such goods and services made available to the general public through the Website and the physical stores.

67. Plaintiff is entitled to recover his reasonable attorney's fees, costs, and expenses pursuant to the ADA. To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's Websites are in violation of the ADA;

B. An Order requiring Defendant, by a date certain, to update the Websites, and continue to monitor and update the Websites on an ongoing basis, to remove barriers in order that individuals with visual disabilities can access, and continue to access, the Websites and effectively communicate with the Websites to the full extent required by Title III of the ADA;

C. An Order requiring Defendant, by a date certain, to provide ongoing support for web accessibility by implementing a Websites accessibility coordinator, a Websites application accessibility policy, and providing for Websites accessibility feedback to ensure compliance thereto;

D. An Order directing Defendant, by a date certain, to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its Websites;

E. An Order directing Defendant, by a date certain, to establish a policy of web accessibility and accessibility features for the Websites to ensure effective communication for individuals who are visually disabled;

F. An Order requiring, by a date certain, that any third-party vendors who participate on Defendant's Websites to be fully accessible to the visually disabled;

G. An Order directing Defendant, by a date certain and at least once yearly thereafter, to provide mandatory web accessibility training to all employees who write or develop programs or code for, or who publish final content to, the Websites on how to conform all web content and services with ADA accessibility requirements and applicable accessibility guidelines;

H. An Order directing Defendant, by a date certain and at least once every three months thereafter, to conduct both automated and manual accessibility tests of the Websites to identify any instances where the Websites are no longer in conformance with the accessibility requirements of the ADA and any applicable accessibility guidelines, and further directing Defendant to send a copy of the next twelve (12) quarterly reports to Plaintiff's counsel for review;

I. An Order directing Defendant, by a date certain, to make publicly available and directly link from the Websites homepage, a statement of Defendant's Accessibility Policy to ensure the persons with disabilities have full and equal enjoyment of the Websites and shall accompany the public policy statement with an accessible means of submitting accessibility questions and problems;

**J.** An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

**K.** Such other and further relief as the Court deems just and equitable.

Respectfully submitted,

s/ Lauren N. Wassenberg
Lauren N. Wassenberg, Esq. (FBN: 34083)
　*Attorney for Plaintiff*
Lauren N. Wassenberg & Associates, P.A.
33 SE 4th St., Ste. 100
Boca Raton, FL 33432
(305) 804-5435
WassenbergL@gmail.com

s/ Glenn R. Goldstein
Glenn R. Goldstein, Esq. (FBN: 55873)
　*Attorney for Plaintiff*
Glenn R. Goldstein & Associates, PLLC
8101 Biscayne Blvd., Ste. 504
Miami, Florida 33138
(561) 573-2106
GGoldstein@G2Legal.net